CHANDLER GRAIN AND MILLING COMPANY *vs.* JOHN SHEA.

JOHN SHEA *vs.* CHANDLER GRAIN AND MILLING COMPANY.

Essex.     November 7, 1912. — January 29, 1913.

Present: RUGG, C. J., BRALEY, SHELDON, & DECOURCY, JJ.

*Sale,* What constitutes.   *Custom.   Evidence,* Relevancy and materiality, Admissions by conduct, Self serving acts.   *Damages,* in contract.

A milling company made the following contract in writing with a customer: "We hereby confirm sale to you of" certain meal. "It is understood that you are to have free storage for any portion of this meal for the remainder of this year; that it is at your risk as far as fire is concerned; that you are to give your notes in settlement . . . with interest, with the privilege of renewing them or any portion of them on which the meal they represent is unsold." At the trial of an action by the customer against the company for breach of the contract, there was no evidence that at the time the contract was made the company had on hand the quantity of meal specified therein. No meal was at any time marked or set apart for the customer. Before all of the meal had been called for by the customer, the company's mills were destroyed by fire and the company refused to complete the delivery of the meal called for by the contract. *Held,* that no title to the meal had passed to the customer before the fire, so that it was not the plaintiff's meal that was destroyed and the defendant might be found liable for refusing to complete the delivery of the meal called for by the contract.

At the trial of an action of contract against a milling company for failure to perform a contract for the sale by the defendant to the plaintiff of a certain quantity of meal, the plaintiff "to have free storage for any portion of" the meal for a specified time at his own risk as far as a fire was concerned, there was no evidence that at the time of the making of the contract the defendant had on hand the quantity of meal called for by the contract. A fire destroyed the defendant's mill before the plaintiff had called for the quantity of meal designated in the contract. The defendant contended that there had been a delivery to the plaintiff and offered evidence of a trade custom to the effect that corn was spoken of as meal, and that when meal was sold it was sold in the grain with the understanding that it should be ground into meal shortly before delivery. The evidence was excluded. It appeared that no meal or corn was marked or set apart for the plaintiff at any time. *Held,* that under the circumstances the custom was irrelevant, and the evidence properly was excluded.

A milling company made a contract in writing for the sale to a customer of a certain quantity of meal, the contract providing that the customer might store any portion of the meal in the company's mill at his own risk for a certain period. The mill was burned before all the meal was called for by the customer, and the company refused further deliveries of the meal, contending that the title to the meal had passed to the customer before the fire. At the trial of an action

upon the contract by the customer against the company, evidence was offered. by the company that the customer had taken out policies of insurance upon "grain" while stored in the company's mill, and that the company had stricken from its claims under its policies of insurance any claim for the loss of the grain sold to the customer. The evidence was excluded. *Held,* that the exclusion of the evidence as to insurance by the customer was proper, as the act of the customer in procuring insurance was not inconsistent with title to the meal being in the company; and that the exclusion of the evidence of the conduct of the company as to its insurance was proper, as such action was analogous to a declaration in its own interest after the rights of the parties had been fixed by the contract.

In an action against a milling company for damages due to its failure to perform a contract providing for the sale to the plaintiff of a certain quantity of meal at a certain price, it is proper for the judge to refuse to rule that in no event could the plaintiff recover more than the contract price.

CONTRACT, upon four promissory notes, made by John Shea and payable to the Chandler Grain and Milling Company. Writ dated December 14, 1908; also

CONTRACT by Shea against the Chandler Grain and Milling Company upon the agreement described in the opinion, for the sale to Shea of "damaged meal." Writ dated August 3, 1907.

In the Superior Court the cases were tried together before *Bell,* J. The facts are stated in the opinion. Upon answers of the jury to special questions submitted to them the judge ordered a verdict for the plaintiff in the first case in the sum of $4,888.71, and for the plaintiff in the second case in the sum of $5,929.69, and reported the cases for determination by this court.

*J. P. Sweeney,* for the Chandler Grain and Milling Company.

*J. J. Sullivan,* (*M. A. Sullivan* with him,) for Shea.

RUGG, C. J. The Chandler Grain and Milling Company, hereafter called the company, was engaged in the business of grinding, milling and handling grain at wholesale. Shea conducted chiefly a retail business in grain and meal. The company executed and delivered to Shea on June 7, 1907, a contract of the tenor following:

"We hereby confirm sale to you of five thousand (5000) bags Damaged Meal at 90c per bag f. o. b. teams or cars at our mill. It is understood that you are to have free storage for any portion of this meal for the remainder of this year; that it is at your risk as far as fire is concerned; that you are to give your notes in settlement for this Meal with interest, with the privilege of re-

newing them or any portion of them on which the meal they represent is unsold."

Contemporaneously notes of Shea were delivered to the company for the purchase price. Two hundred bags were delivered and paid for according to the contract, when the mill of the company was destroyed by fire. The company brings action against Shea on the notes and Shea against the company for damages in refusing to deliver to him the meal according to the contract.

There was no evidence tending to show that the company at the time of the sale had on· hand the quantity of meal called for by the contract. The report states that no meal or corn was at any time marked or set apart for Shea. The contract does not point out any particular meal as the subject of the sale. It fixes merely quantity and quality. The title to meal would not pass to Shea until something was done to designate that which was covered by the contract. *New England Dressed Meat & Wool Co.* v. *Standard Worsted Co.* 165 Mass. 328, and cases there cited. *Bristol Manuf. Co.* v. *Arkwright Mills, ante,* 172.

The company offered to show the existence of a trade custom to the effect that corn is spoken of as meal, and that when meal is sold it is sold in the grain with the understanding that it shall be ground and converted into meal shortly before delivery. It would be hard to say that a word of such definite meaning as "meal" when used in a written contract could be translated by oral evidence to signify corn. It is not necessary to determine whether under any circumstances such a custom would have been competent, for there were no conditions which rendered it admissible in the case at bar. There was no separation of corn to the satisfaction of the defendant's contract. There are no facts which point to an intent to pass present title to definite goods. Something had to be done to put the corn in condition to render it deliverable in conformity to the contract. When anything remains to be performed before an article which is the subject of a sale can be delivered, title does not pass until that thing is done. *Riddle* v. *Varnum,* 20 Pick. 280. *Wesoloski* v. *Wysoski,* 186 Mass. 495. *Automatic Time Table Advertising Co.* v. *Automatic· Time Table Co.* 208 Mass. 252, 256.

Since no title had passed to any corn or meal beyond that de-

livered, it was of no consequence how much the company had on hand at the time of the fire.

The insurance policies held by Shea on "grain" while stored in the mill of the company were excluded rightly. Sometimes the existence of insurance may be some evidence of assertion of title by the insurer. Whether title was in Shea or not depended upon circumstances disconnected with insurance. The procurement of insurance by him was in no way inconsistent with title in the company under the facts disclosed.

The conduct of the company in striking from its claim for property covered by its insurance the balance of the meal sold to Shea was a declaration in its own interest made after the event, so far as these actions are concerned, and was excluded correctly.

There was no error in denying the company's sixteenth request for instructions to the effect that in no event could Shea recover more than the contract price. The general rule is that the measure of damages is the difference between the contract price and the market price at the time fixed for delivery. There was evidence which, taken at its face, tended to show that the market value was considerably in excess of the contract price. Its force and weight were for the jury.

So far as the requests for instruction were germane or have been argued, they are disposed of by what has been said.

*Judgment on the verdict in each case.*