NATIONAL WHOLESALE GROCERY COMPANY, INCORPORATED, *vs.* WILLIAM MANN.

Bristol.    October 27, 1924. — February 24, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Evidence,* Competency, Relevancy and materiality, Extrinsic affecting writing, Of value. *Contract,* Construction, Performance and breach, "C. I. F." contract. *Letter of Credit. Sale. Damages,* For breach of contract. *Payment. Bills and Notes,* Receipt of check as payment. *Words,* "C. I. F.," "Bill of lading," "Delivery order."

A contract in writing, dated May 6 and executed and delivered on May 12, provided for the sale by an importer to a merchant of a quantity of sugar subject to certain terms, payments to be made upon presentation of certain documents "against irrevocable letter of credit, to be opened by buyer immediately with some" bank in favor of the importer. After the arrival of the sugar, the necessary documents were presented at the bank and payment was received by the importer. The merchant then, contending that some of the goods delivered did not satisfy the conditions of the sale, brought an action against the importer for breach of the contract of sale. At the trial of the action, the judge admitted in evidence a letter, dated May 11, of the bank issuing the letter of credit to the defendant, stating the terms of the contract incorrectly and with important variations, and requesting the defendant to acknowledge receipt of the letter and to "advise us if the terms as stated are correct." The defendant did not reply to nor pay any attention to the letter. *Held,* that
    (1) The contract of the bank with the plaintiff was distinct from that of the defendant with the plaintiff;
    (2) The defendant was under no legal obligation to reply to the letter and was not bound by it in any particular;
    (3) Antedating the contract of the plaintiff with the defendant, the letter could not affect its terms;
    (4) The admission of the letter was error.
Description by RUGG, C.J., of the common meaning of a "C. I. F." contract of sale of merchandise.

A contract in writing made on May 12 provided for the sale by an importer to a merchant of one hundred tons of sugar "packed in bags of about two (2) cwt. each.   Sound packages only to be delivered" at a certain price "C. I. F. New York, In bond.   Net landed weights to govern.   Adjustment on final weights.   Shipment to be made approximately as follows: — 100 tons May/June Seller's Option from the Island of Java.   Payment to be made by net cash upon presentation of delivery order or warehouse receipt against irrevocable letter of credit . . . with some . . . Bank in favor of" the importer.   The letter of credit on a bank was furnished and was accepted by the importer. On August 10 the importer sent to the bank a delivery order and a "*pro forma*" invoice covering the entire one hundred tons agreed upon and four days later collected thereon.   The delivery order covered part of a larger lot of sugar purchased by the importer and then in transit from Java in one shipment and covered by one bill of lading. On August 20, the shipment arrived in New York and, on the next day, the importer sent to the merchant a consular invoice and extracts from the original bill of lading.   The merchant began discharging the cargo and, claiming that two hundred and fifty-six bags out of one thousand and four were not in accordance with the contract of sale, brought an action against the importer for breach of the contract.   *Held*, that

(1) There was no violation of the contract by the defendant in collecting on the letter of credit when he did;

(2) The contract between the plaintiff and the defendant was not a simple C. I. F. contract;

(3) It could not be ruled rightly as matter of law that the title to the sugar passed from the defendant to the plaintiff at the place of shipment; but the contract taken as a whole contemplated a delivery and transfer of title at the port of discharge of the cargo;

(4) The contract was entire, was for a stipulated amount of sugar, with the slight variation in quantity and the approximation to exactness implied by and permissible under the word "about";

(5) The plaintiff had no right to treat each bag as a separate subject of sale, but must accept or reject the shipment as a whole;

(6) A ruling by the trial judge, to the effect that under the terms of the contract the plaintiff had a right to refuse to accept any packages that were unsound, was erroneous.

If the plaintiff were found to be entitled to maintain an action against the defendant for breach of the contract above described in not delivering "sound packages," the rule of damages applicable was that he was entitled to recover the difference between the market value of the property contracted to be sold in the condition required by the contract at the time and place stipulated, and its actual market value at that time and place.

On the evidence at the trial of the action above described, it was *held* that the plaintiff was under no legal duty to accept a check sent by the defendant to him for adjustment as to weight, which the plaintiff did not use, and that there was nothing to require a finding of an intent on the plaintiff's part to take the check in payment or on account.

The weights of the sugar delivered under the contract above described must, under its provisions, be established by the net "landed weights" at New York.

The value of American raw sugar in November had no relevancy to the measure of damages which controlled the rights and obligations of the parties, the delivery having been of Java sugar and in August.

CONTRACT, with a declaration in two counts, described in the opinion, for breach of a contract in writing for sale of sugar by the defendant to the plaintiff.   Writ dated October 16, 1920.

In the Superior Court, the action was tried before *Dubuque*, J.   The letter of National Exchange Bank to the defendant under date of May 11, 1920, referred to in the opinion, was as follows:

"We hereby confirm Commercial Credit issued by this bank this day in your favor for the account of the National Wholesale Grocery Co., of an amount of $50,000.   No. 102, against which you are to draw drafts at 30 days' sight covering about 100 tons of White Java sugar; the goods to be covered by insurance by the shipper, meaning yourself, until delivery is made of the same.

"You are authorized to draw drafts against this bank at 30 days sight which must be accompanied by either bills of lading, warehouse receipts, or delivery order on warehouse.

"The credit is No. 102, and drafts under it are to be honored and accepted by us as drawn and negotiated on or before Aug. 15th, 1920.

"Our understanding is that the bills of lading or other documents will cover the merchandise in this country only and that the contract with our customer, the National Wholesale Grocery, calls for the goods to be delivered in New York City.

"The original credit will be forwarded to you by the National Wholesale Grocery Co.

"Will you kindly acknowledge receipt of this letter and advise us if the terms as stated are correct."

Other material evidence is described in the opinion.   At the close of the evidence, the plaintiff asked for and the judge gave the following ruling:

"2. Under the terms of the contract the plaintiff had a right to refuse to accept any packages that were unsound."

The defendant asked for the following rulings, among others:

"1. Upon all the evidence the plaintiff is not entitled to recover.

"2. Upon all the evidence the defendant is not liable for alleged failure to deliver sugar complying with the contract.

"3. Under the contract title passed on delivery of the sugar to the carrier in Java.

"4. The defendant was not required by the contract to deliver sound packages to the plaintiff in New York.

"5. The risk of loss was on the plaintiff after the sugar was delivered to the carrier in Java.

"6. The defendant cannot be held responsible for any damage which occurred to the sugar after it was placed upon the boat at Java.

"7. The burden is on the plaintiff to prove that the sugar which it received was not in sound packages when delivered to the boat at Java.

"8. There is no evidence that the sugar which the plaintiff received was not in sound packages when delivered to the boat at Java.

"8-a. Title passed on delivery to the plaintiff of the delivery order for 1004 bags of sugar ex S. S. Rondo.

"8-b. There is no evidence that the packages which the plaintiff received were unsound at the time title passed."

"10. Under the law of New York, the plaintiff having accepted a part of the sugar was not entitled to reject any of it.

"11. This is an entire and indivisible contract and the plaintiff was not entitled to reject part and accept the balance of the sugar.

"12. Under the contract the plaintiff was obliged to accept or reject the entire shipment.

"13. If the plaintiff is entitled to recover anything on account of unsound packages, it is entitled to recover only the difference between the value of sound packages and the value of the packages it received, at the time of delivery in New York.

"13.-a There is no evidence of the value of the alleged unsound packages at the time of delivery at New York."

"18. If, under all the circumstances, the defendant furnished the plaintiff with a copy of corrected weights and a check for the difference in weights, within a reasonable time, the plaintiff cannot recover for shortage in weights."

As to the defendant's request numbered 13, the judge stated: "Number 13 I give modified. If the plaintiff is entitled to recover anything on account of unsound packages, it is entitled to recover only the difference between the contract price and the value of the packages it received at the time of delivery in New York. The request had it 'between the market value.' I do not think that is the rule. I think the rule is the difference between the contract price and the market value at the time of delivery, or at the time of the alleged breach."

The other requests by the defendant, above quoted, were refused by the judge.

There was a verdict for the plaintiff in the sum of $7,070.54. The defendant alleged exceptions.

*J. C. Coughlin,* for the defendant.

*D. R. Radovsky, (H. W. Radovsky* with him,) for the plaintiff.

RUGG, C.J.    This action of contract is brought to recover a part of the contract price paid for Java sugar purchased by the plaintiff of the defendant. There are two counts in the declaration on which the case was tried: One alleges that the defendant owes the plaintiff $13,000 with interest. The other alleges a written contract whereby the defendant sold to the plaintiff Java sugar; that the defendant made use of a letter of credit in payment thereof before the time permitted by the contract and collected full price for the sugar, namely $47,600; that the defendant, although required to make delivery in sound packages, delivered a large number of unsound packages, which the plaintiff refused to accept and offered to return, and thereafter sold same on account of defendant, and that the defendant owes the plaintiff $13,000.

The contract was in writing. It was dated May 6, 1920,

but apparently was finally executed and delivered by the plaintiff on May 12, 1920. So far as material to the present controversy, its terms were,

"This is to confirm sale made by Wm. Mann, Boston, Mass. to NATIONAL WHOLESALE GROCERY Co., Fall River, Mass. ABOUT ONE HUNDRED TONS of 2,240 lbs. each WHITE JAVA SUGAR packed in bags of about two (2) cwt. each. Sound packages only to be delivered.

AT TWENTY ONE AND TWENTY FIVE (21.25) CENTS. C. I. F. New York, In bond.

Net landed weights to govern. Adjustment on final weights.

SHIPMENT to be made approximately as follows:—

100 tons May / June Seller's Option from the Island of Java.

PAYMENT to be made by net cash upon presentation of delivery order or warehouse receipt against irrevocable letter of credit, to be opened by buyer immediately with some Boston Bank in favor of Wm. Mann for the full amount of the Invoice."

The sugar sold to the plaintiff was part of a larger lot previously purchased by the defendant under a contract similar in all respects. Under date of May 11, 1920, the plaintiff wrote to the defendant a letter, the material parts of which are: "Referring to your confirmation of May 6th, covering about one hundred (100) tons of White Java Sugar for May or June shipment, we are enclosing you herewith thirty-day sight letter of credit opened in your favor by the National Exchange Bank of this city, [Providence] under their No. 102 in the amount of fifty thousand dollars ($50,000). You will please note same is made available until August 15, 1920 and can be negotiated against either warehouse receipt, delivery order or bill of lading. The National Exchange Bank is writing you direct confirming same." On May 12, 1920, the plaintiff wrote to the defendant enclosing the contract above quoted, signed by it. The defendant accepted the letter of credit after the plaintiff had agreed to pay the defendant the charges for revenue stamps

and for discounting the thirty day draft offered in payment of the net cash required by the contract. The letter of credit was not in evidence.

The admission in evidence of the letter of the National Exchange Bank to the defendant under date of May 11, 1920, was error. The statement of the terms of the contract between the plaintiff and the defendant therein contained was inaccurate and contained important variations. It differed in its statement of the terms of the letter of credit from those contained in the plaintiff's letter of the same date to the defendant already quoted. The bank was bound by its letter of credit, which it entrusted to the plaintiff as its customer to deliver to the defendant and which the defendant accepted. That was a distinct contract from the one between the plaintiff and the defendant. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 151, 152. This letter of the bank was not acknowledged by the defendant, who apparently paid no attention to it. He was not bound by it in any particular. His rights are not affected by it. He was under no legal obligation to answer it. *Jennings* v. *Wall*, 217 Mass. 278, 282. Moreover, this letter of the bank antedated the delivery by the plaintiff of the contract between the parties hereto and could not affect its terms. All previous or contemporaneous oral or written negotiations were merged in the contract as finally phrased in writing. *Jennings* v. *Puffer*, 203 Mass. 534. *Goldenberg* v. *Taglino*, 218 Mass. 357, 359. *Snider* v. *Deban*, 249 Mass. 59.

There was no violation of the contract by the defendant in collecting on the letter of credit when he did.

It was undisputed or established that on August 10, 1920, the defendant sent a delivery order and a *pro forma* invoice covering two hundred and twenty-four thousand pounds of sugar to the bank, and on August 14, 1920, collected on the letter of credit $47,600. The delivery order was addressed to the delivery clerk of the S.S. Rondo at a New York dock, directing him to deliver to the order of the plaintiff the sugar called for by the contract. Consular invoice and extracts from the original bill of lading respecting the sugar were sent by the defendant to the plaintiff on August 21, 1920, the ship

having arrived the day before.    It began discharging cargo, and a representative of the plaintiff examined bags as they were put on the pier.    Ultimately one thousand and four bags purporting to contain the sugar called for by the contract were delivered to the plaintiff and taken into its possession and either shipped or stored by it.    Confessedly seven hundred and forty-eight of these bags conformed to the contract.

The present controversy centers about the remaining two hundred and fifty-six bags.    The plaintiff contends that these were not "sound packages," as required by the contract, forty-four being "stained" or wet, forty "slack" and one hundred and seventy-two "torn and mended."    The plaintiff notified the defendant on September 27, 1920, that it rejected these bags and that it was drawing on him for the contract price thereof with warehouse receipt annexed indorsed to his order.    The defendant refused to accept the draft.    The present action was brought in October, 1920.    Evidence was introduced in support of the plaintiff's contentions respecting the two hundred and fifty-six bags, and to the contrary, by the defendant.

The contract of the parties was in writing.    Its statement of price was followed by the letters, "C. I. F."    These letters mean that the price named covered cost, insurance and freight.    The common meaning of a c. i. f. contract is that the seller agrees to put the goods on board, to procure the ordinary or stipulated shipping documents, whether bill of lading or other evidence of title, to pay the freight and to cause insurance of the customary kind to be placed on the shipment in the usual way.    The seller performs his contract by seeing that the cargo is on board and by forwarding seasonably to the purchaser the shipping documents and making appropriate arrangements at his own expense for the payment of freight and for insurance for the benefit of the buyer.    Commonly a bill of lading and policy of insurance are to be delivered to the buyer.    Where the goods are distinct and separate, among the documents to which the buyer is entitled and which the seller must tender to be entitled to payment, is a policy of insurance in the name of the

buyer. Doubtless custom of the trade as to insurance of a larger quantity of goods in mass, or other conditions, may alter the obligation of the seller in this particular. See *Wilson, Holgate & Co. Ltd.* v. *Belgian Grain & Produce Co. Ltd.* [1920] 2 K. B. 1, 9. The seller is then entitled to payment in the absence of other agreement as to time of payment. Two consequences follow from a simple c. i. f. contract; when the goods have been put on board (1) the title passes to the buyer, and (2) the goods are at the risk of the buyer. The buyer is protected against loss from perils of the sea by the insurance and against nondelivery arising from misconduct of the captain of the ship or mariners, not covered by insurance, by his right of action against the shipowner. There is no obligation on the part of the seller to deliver at the port of destination. *Ireland* v. *Livingston,* L. R. 5 H. L. 395, 406, 407. *Thames & Mersey Marine Ins. Co. Ltd.* v. *United States,* 237 U. S. 19, 26. *Biddell Brothers* v. *E. Clemens Horst Co.* [1911] 1 K. B. 214; *S. C.* [1911] 1 K. B. 934, 952 to 963. *E. Clemens Horst Co.* v. *Biddell Brothers,* [1912,] A. C. 18. *C. Groom, Ltd.* v. *Barber,* [1915] 1 K. B. 316. *Arnhold Karberg & Co.* v. *Blythe, Green, Jourdain & Co.* [1916] 1 K. B. 495. *Re Denbigh, Cowan & Co.* 125 L. T. R. (N. S.) 388. *Manbre Saccharine Co. Ltd.* v. *Corn Products Co. Ltd.* [1919] 1 K. B. 198. *Mee* v. *McNider,* 109 N. Y. 500. *Smith Co. Ltd.* v. *Moscahlades,* 193 App. Div. (N. Y.) 126, 129. *Dwane* v. *Weil,* 199 App. Div. (N. Y.) 719, 731, 732. *Smith Co. Ltd.* v. *Marano,* 267 Penn. St. 107. *Harper* v. *Hochstim,* 278 Fed. Rep. 102.

The parties in the case at bar did not make a simple c. i. f. contract. Although using those letters as descriptive of their contract, they superimposed three other provisions of significance, all at variance with the implications of a simple c. i. f. contract.

(1) One modification is that payment is to be made "upon presentation of delivery order or warehouse receipt." Nothing is said about presentation of the usual documents or any equivalent term. On the contrary the seller has the option of presenting one or the other of these two specified papers, neither of which is required under a strict c. i. f. contract.

A warehouse receipt manifestly could not be delivered until the goods had been landed and stored in a warehouse. The present contract makes no reference to a bill of lading. The simple c. i. f. contract requires the seller to present a bill of lading as one of the documents to which the buyer is entitled. That is a document issued by a carrier on sea or land showing a contract for carriage and delivery of goods. It represents the goods. Transfer of it in due form transfers title to the goods. *Rowley* v. *Bigelow*, 12 Pick. 306, 314. *Stollenwerck* v. *Thacher*, 115 Mass. 224, 226, 227. A delivery order is a paper issued by the owner of goods, directed to a person holding them in his behalf, requesting delivery to another. It may or may not pass title to goods, according to circumstances. It is something which entitles the holder to the possession of goods either at once or at some future time. *M'Ewan* v. *Smith*, 2 H. L. Cas. 309, 326. *Imperial Bank* v. *London & St. Katharine Docks Co.* 5 Ch. D. 195. *Gunn* v. *Bolckow, Vaughan & Co.* L. R. 10 Ch. App. 491, 502. *Jenkyns* v. *Usborne*, 7 Man. & G. 678, 699, 700.

There is nothing in this record to show any peculiar meaning attaching to "delivery order." The delivery order was addressed to the delivery clerk of a named steamship at a particular pier, and was accepted by the buyer without objection as being in compliance with the contract. The extract from the original bill of lading sent to the buyer with the consular invoice, we interpret to refer to the bill of lading to the importer of the entire shipment of Java sugar and not to the particular lot sold to the plaintiff.

(2) Another modification of the simple c. i. f. contract made by the parties in the case at bar was: "Net landed weights to govern. Adjustment on final weights." These words manifestly can be given effect only by ascertaining and establishing the weights after the cargo has been discharged and the sugar put on the dock at destination and the weight of the containers determined and deducted. The exact amount of sugar delivered and the precise amount to be paid depend upon the verification of these facts after arrival at port of consignment.

(3) The third significant provision is: "Sound packages

only to be delivered." While these words might be given effect by interpreting them to mean delivery on board at the port of shipment, it seems more natural in the circumstances of this contract and its subject matter to attribute to them the meaning that the packages were to be sound at the time when there was a separation of the particular packages destined for the plaintiff under the contract, from the larger mass in which they were commingled at the time of original shipment and during the voyage. Apparently the sugar sold to the plaintiff was part of a larger quantity owned by the defendant, and his sugar in turn was part of a still larger bulk constituting the importation. The parties doubtless knew the course and customs of the trade. In this context these words may be thought to refer to the time when the sugar of the plaintiff would be identified and set apart for it. *Scudder* v. *Worster*, 11 Cush. 573. *Keeler* v. *Goodwin*, 111 Mass. 490, 491. *Chandler Grain & Milling Co.* v. *Shea*, 213 Mass. 398, 400. Moreover, there is much in this record to indicate that the parties themselves interpreted these words touching delivery as referring to the physical transfer of goods to the possession of the buyer. The conduct and correspondence of the defendant is susceptible of the inference that he conceded that he ought to repay to the plaintiff a just amount on account of the forty stained bags. If the agreement between the parties were a strict c. i. f. contract, the risk of the bags becoming stained or wet during the voyage rested on the plaintiff, and his remedy would be by claim under the insurance or possibly against the shipowner.

Without emphasizing any one of these three modifications above another, or depending upon any one alone, their collective force compels the conclusion that this was not a simple and strict c. i. f. contract. It follows from these considerations that the ordinary terms of a c. i. f. contract were modified by specific stipulations of the parties. It could not rightly be ruled that title to the sugar passed at port of shipment. The contract taken as a whole contemplated a delivery and transfer of title at port of discharge of cargo. The defendant's requests for rulings, numbered 3 to 8 in-

clusive, were denied rightly. *A. Kilpstein & Co.* v. *Dilsizian,* 273 Fed. Rep. 473, 475; writ of certiorari denied, 257 U. S. 639. *Willits & Patterson* v. *Abekobei & Co. Ltd.* 197 App. Div. (N. Y.) 528. *Schopflocher* v. *Essgee Co. of China, Inc.* 197 App. Div. (N. Y.) 781. *George Carocopos, Inc.* v. *James Chieves & Co.* 203 App. Div. (N. Y.) 104. Williston on Sales, (2d Ed.) § 280f.

The contract was entire. It was for a stipulated amount of sugar, with the slight variation in quantity and the approximation to exactness implied by and permissible under the word "about." *Freeman* v. *Hedrington,* 204 Mass. 238. Although the sugar was sold by weight and the total value was to be ascertained by a calculation based on the number of pounds, it still was one bargain, a single contract. This is settled by our own decisions. *Clark* v. *Baker,* 5 Met. 452. *Morse* v. *Brackett,* 98 Mass. 205. *Mansfield* v. *Trigg,* 113 Mass. 350. *Craig* v. *Lane,* 212 Mass. 195. *Carver-Beaver Yarn Co. Inc.* v. *Wolfson,* 249 Mass. 257. The plaintiff as buyer could not treat each bag as a separate subject of sale, but must accept or reject the shipment as a whole. It could not accept part and reject part. *Roach* v. *Lane,* 226 Mass. 598. The same evidence was introduced as to the law of New York on this point as was before the court in *Shohfi* v. *Rice,* 241 Mass. 211, where at page 214 it was said: "The uniform doctrine of these decisions . . . is that the contract in question was entire, and the defendants having accepted and retained part of the goods became bound to pay for the whole shipment."

It follows that in any aspect of the case the ruling, to the effect that under the terms of the contract the plaintiff had a right to refuse to accept any packages that were unsound, was erroneous.

The plaintiff, having accepted a great part of the shipment, was bound to pay for the whole. Remedy exists for whatever breach of contract may be shown.

The rule of damages by which the plaintiff under appropriate pleadings may recover, is the one ordinarily applicable in actions by a buyer for breach of warranty in a contract for the purchase of goods delivered to and accepted by him.

That rule is the difference between the market value of the property contracted to be sold in the condition required by the contract at the time and place stipulated, and its actual market value. *New York Central Railroad* v. *Freedman*, 240 Mass. 200, 209. *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 453. *F. W. Stock & Sons* v. *Snell*, 226 Mass. 499, 504. *Tuttle* v. *Brown*, 4 Gray, 457, 460. *Brown* v. *Bigelow*, 10 Allen, 242. *Stiles* v. *White*, 11 Met. 356, 358. The alleged failure on the part of the defendant to deliver sound packages amounted to a breach of warranty and nothing else, in the circumstances disclosed. The evidence as to the value of the sugar for the purpose of determining the damages must conform to this rule.

The check sent by the defendant to the plaintiff for adjustment as to weight was not used by the latter. The plaintiff was under no legal duty to accept it. There is nothing to require the finding of an intent on its part to take it in payment or on account. *Keystone Grape Co.* v. *Hustis*, 232 Mass. 162, 165. *Feinberg* v. *Levine*, 237 Mass. 185, 187.

At the new trial the weights must be established by the net "landed weights" at New York as stipulated in the contract.

The value of American raw sugar in November, 1920, has no relevancy to the measure of damages which controls the rights and obligations of the parties. There was error in its admission.

It is not necessary to examine the other exceptions. They are not likely to arise in the same form at a new trial.

*Exceptions sustained.*