## GEORGE A. OHL & CO. v. A. L. SMITH IRON WORKS.

## A. L. SMITH IRON WORKS v. GEORGE A. OHL & CO.

### Nos. 2537, 2538.

Circuit Court of Appeals, First Circuit.

July 7, 1933.

See, also, 57 F. (2d) 44, and 288 U. S. 170, 53 S. Ct. 340, 77 L. Ed. 681.

Lee M. Friedman, of Boston, Mass. (Louis B. King and Friedman, Atherton, King & Turner, all of Boston, Mass., on the brief), for appellant.

Martin Witte, of Boston, Mass. (Lowell A. Mayberry, Robert Gallagher, and Samuel Abrams, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

No. 2537 is an appeal from a judgment of the federal District Court for Massachusetts in favor of the defendant, the Smith Iron Works, in a law action brought against it by Ohl & Co. No. 2538 is an appeal from a judgment of that court in favor of the plaintiff, the Smith Iron Works, in a law action which it brought against Ohl & Co.

In No. 2537 the plaintiff sought to recover the amount of twelve promissory notes made by the defendant and delivered to the plaintiff, the payee, with interest and protest fees. Each note was dated March 1, 1926, and was for the sum of $542. The first was payable six months after date, the others at successive monthly intervals, and all were made payable to the order of the plaintiff at the Chelsea Trust Company, Chelsea, Mass., with interest at 6 per cent. This suit was brought November 17, 1927. In its answer filed February 29, 1928, the Smith Company pleaded a general denial, want of consideration, and failure of consideration.

In No. 2538, the suit was brought December 7, 1927. In its declaration the Smith Company alleged in substance that on or about the 1st day of March, 1926, it entered into a written agreement with the defendant —a conditional sale contract, drawn in the form of a lease, for the purchase and sale of one standard 12-foot 6-inch 103,000 pound power press and six sets of dies for a total purchase price of $12,009.68, the title in the machine to remain in the defendant Ohl & Co., until the purchase price was paid in full; that by the terms of the agreement the $12,009.68 was to be paid as follows: $1,000 in cash with the order, $1,000 when the machine was ready for delivery, and $250 in cash with the order for the dies—all of which, amounting to $2,500, was paid at the time the agreement was executed; and for the balance of $9,759.68 eighteen negotiable notes were given, the first for $545.68 and the remaining seventeen for $542 each; that the first note was payable thirty days from date of the agreement and the remaining notes at successive monthly intervals; that the notes were not to be considered as payments until they were actually paid in cash, with interest at 6 per cent. per annum; that by a rider dated March 9, 1926, attached to the aforesaid agreement and made a part thereof, the defendant warranted that the press had the capacity stated in the defendant company's specifications of said press, namely, that it would bend three-eighths-inch soft steel on square dies, the female of which measured 3 inches across the corners, and that the material and workmanship was of the best; that the plaintiff was engaged in the business of fabricating, manufacturing, and installing architectural, ornamental, and structural steel and iron work, and that it purchased said power press for use in its factory, all of which facts were well known to the defendant, and that, in making said purchase, the plaintiff relied upon the warranty; that the said machine, a ponderous affair, weighing over fifty tons, was delivered to the plaintiff at its place of business at Chelsea, Mass.; that it was properly set up and installed by the agents and servants of the plaintiff under the supervision of its master mechanic; that from the very beginning the press rendered unsatisfactory service, and in no way accomplished the purposes for which it was purchased, nor did it conform to the warranty and specifications herein above referred to; that it failed to bend properly sheets of soft steel three-eighths of an inch in thickness; that the sheets thus bent showed a decided bowing in two directions, a material deflection that made it impossible to use them without employing additional man power after each operation to recover the sheets from the deflection; that the results were the same even with sheets of steel less than three-eighths of an inch in thickness; that the press developed mechanical defects due to poor material and workmanship; that, because of its poor material and workmanship, and while the machine was being used on

sheets of steel of less thickness than the three-eighths of an inch in thickness it was guaranteed to bend, the end upright or stanchion at the opposite end of the motor broke in two pieces, rendering the machine unfit for use without extensive and expensive repairs; that the Smith Company notified the defendant of the various imperfections as soon as they became apparent; that it followed the defendant's suggestions, and took every possible precaution in the operation of the press, all of no avail; that it continued to make payments under the agreement for five months in the hope that the press would perform according to the warranty and specifications; that in all other respects the plaintiff performed its part of said agreement; and that finally, on or about the 12th day of August, 1926, it notified the defendant that it refrained from making any further payments until the press was put into the condition required by the specifications and warranty.

In No. 2537, the suit upon the notes, the jury returned a verdict for the defendant, the Smith Company. In No. 2538, the suit upon the warranty, a verdict was returned for the plaintiff, the Smith Company, in the sum of $7,500; and judgments in both actions were entered accordingly. It is from these judgments that these appeals are taken.

In its assignment of error (No. 28) Ohl & Co. complains that the court erred in denying its motion for a directed verdict in No. 2537.

The court charged the jury, subject to the exception of Ohl & Co., that:

"The *only question* here is—was that machine a reasonable and proper machine, and did it in fact bend this steel, this soft steel, in the way which the manufacturer, Ohl, agreed that it would bend that steel. * * * The *whole thing*, I say, comes down to a question of fact. Would this machine bend the iron in a proper way to turn out merchantable stair treads and risers and stringers. * * * Now it is up to you to say *on this whole case* —in the first place, did the machine do or would the machine have done, if properly handled and operated, the work in turning or bending these soft steel plates? If you find that it would do that, then your verdict must be for the Ohl Company for the full amount of what they are suing for." (Italics ours.)

The giving of these instructions is assigned as error.

Ohl & Co. also took the following exceptions to the charge: (1) "That the charge failed to instruct the jury as to its verdict in the Ohl v. Smith case in the event it found the machine not as the contract called for"; and (2) "that the charge as a whole did not adequately instruct the jury on the issues raised by the pleadings, specifications, evidence, and requests for rulings." These matters are covered by Ohl & Co.'s assignments Nos. 50 to 53, inclusive.

It appears that Ohl & Co. was a manufacturer in Newark, N. J., of machines or power presses designed to bend metal; that the Smith Company was a manufacturer in Chelsea, Mass., of structural steel and ornamental iron, and wanted the machine or power press for the purpose of manufacturing steel stairs, a fact known to Ohl; that on November 9, 1925, as a result of previous conversations between the parties over the telephone, Ohl & Co. wrote to the Smith Company a letter (Exhibit 13) inclosing a blueprint showing its "standard 12' 6"—103,000 lb. Power Press or Brake with extra opening in housings 42" x 16", * * * geared direct to 30 or 35 h. p. motor 1200 r. p. m.," and other blueprints relating to the same; also blueprints showing corrugating dies and blueprints of standard forming dies, and quoting prices which included the following: 1 standard 12' 6" power press or brake, weight about 103,000 lbs., made from above patterns, arranged for belt power, special reduced price, $10,300; also stating that the following extras should be added for each machine: 1 motor bracket, $65, 1 rawhide pinion, $60, combination cut gear flywheel, $60—a total of $185, also suggesting that their customers generally purchased a 30 or 35 h. p. motor 1,200 r. p. m. along with the extras above mentioned; and, while the letter did not state the price of the motor, other evidence shows that it was $310; that on November 24, 1925, by letter (Exhibit B), the Smith Company accepted the offer of November 9 for a 12' 6" power press of 3/8" capacity, stating: "To this I want to add one (1) motor bracket, one (1) rawhide motor pinion, one (1) combination cut flywheel, also the furnishing and mounting of a 30 horse power motor," and that "the total amount of machine, brackets, and motor is Ten Thousand Seven Hundred and Ninety-Five ($10,795.00) Dollars f. o. b. your siding railroad," and requesting Ohl & Co. to "execute a contract direct with The A. L. Smith Iron Works of Chelsea, Mass., and they will sign same and return to you"; that all the payments mentioned were to be made in the following manner: $1,000 with the signing of the order, $1,000 when notified that the machine is loaded on the cars, and the balance of $8,-

795 in "eighteen equal notes dated from the date that your machine is loaded on the cars and payment monthly thereafter, bearing 6% interest per annum"; that on January 12, 1926, the Smith Company wrote a letter to Ohl & Co. (Exhibit L), placing an order for "five (5) sets of dies for our riser, Type A, U. S. standard gauge No. 11 6'-2" long, as per full sized drawings (in duplicate enclosed)"; also for "a set of dies to bend material *at ninety degrees* the full length of the machine"; that January 19, 1926, Ohl & Co. wrote the Smith Company (Exhibit O) acknowledging receipt of the order for dies, and saying: "These dies to be 2 1/4" across the corners of the female," stating generally the prices of the same, which later, in a letter of February 27, 1926 (Exhibit U) they made definite, stating that the price of the five sets of dies 6' 12" long would be $929.39 and one set of dies 12' 2" long would be $285.29, "making a total of $1,214.68 for the dies and $10,795 for the standard 12'-6" power press or brake, weighing about 103,-000 pounds, with cast iron motor bracket, rawhide motor pinion, combination cut gear flywheel and one thirty H. P. Fairbanks Morse-1200 R. P. M. motor and compensator but without base rails or pulleys, making total amount of your order $12,009.68"; that the letter also notified the Smith Company that the press in question was now being loaded and the first car was expected to go forward on Monday, March 1, and the second car containing the balance of the press and dies on March 2; that throughout these negotiations the parties contemplated and intended that their undertakings should be reduced to a formal writing; that on March 9, 1926, they executed a formal contract dated March 1, 1926, whereby Ohl & Co. made a conditional sale to the Smith Company of the 12' 6" power press with the extras and one 30 horse power Fairbanks Morse motor and the several sets of dies mentioned in the order, "these dies to be 2 1/4" across the corners of the female" for the sum of $12,009.-68,—"One thousand ($1000.00) Dollars in cash with order, One Thousand ($1000.00) Dollars when machine is ready for delivery, Two Hundred fifty ($250.00) Dollars in cash with order for dies (receipt of Two Thousand Two Hundred fifty ($2,250.00) Dollars acknowledged herewith), and the balance of Nine Thousand Seven Hundred Fifty Nine Dollars and sixty eight cents ($9,759.68) by eighteen (18) monthly notes, the first note for Five Hundred Forty-five Dollars and Sixty-eight cents ($545.68) and seventeen (17) notes of Five Hundred Forty-two ($542.00)

each, the first note due and payable thirty days from date hereof and the remaining notes thereafter at intervals of one month each or sooner: said notes, however, not to be considered as payment until actually paid for in cash, interest to be charged at the rate of six percent (6%) per annum," and the title to the property was to remain in Ohl & Co. until paid for in full; that on the date of the execution of the contract, March 9, 1926, there was attached thereto and made a part thereof a provision (Exhibit A) reading as follows:

"Newark, N. J. March 9th, 1926.

"We hereby guarantee that the 12' 6"-103,000 lb. Power Press has a capacity as stated in our specifications of said Press, namely 3/8" soft steel on square dies the female of which measures 3" across the corners, and that the material and workmanship are of the best.

"Geo. A. Ohl & Company

"F. H. Wepler Secretary [Seal]"

That the press, motor, accessories, and dies having been shipped to Boston the 1st of March, Ohl & Co. sent to its Boston attorney the formal written contract and the notes which had been agreed upon for the Smith Company's signature; that the Smith Company asked for an express warranty of the capacity of the press; that the above warranty having been forwarded to Boston was, on March 9, 1926, physically attached to the formal contract, the formal contract was signed, and the notes were executed by Smith and delivered to the attorney for Ohl & Co. at Boston; that the press, dies, etc., arrived in Boston at the Smith Company's place of business March 15, 1926, where the press was set up by its master mechanic and men, and was first operated April 15, 1926.

The first question is whether the court erred in refusing to direct a verdict for Ohl & Co. on the last twelve notes amounting to $6,504 and interest, which constituted the balance of the purchase price of the power press, the accessories, the 30 horse power motor, and the sets of dies.

■ The evidence discloses that there was no controversy as to the dies purchased, the price of which was $1,214.68, and the court in its charge to the jury, to which no objection was raised by either party, said: "The Smith Company has not said that the dies were improper." The same is true with reference to the 30 horse power motor, the price of which was $310—there was no controversy as to that, and the Smith Company made no

claim that it was not according to contract; and the same may be said with reference to the accessories, the price of which was $185—amounting in all to $1,709.68. It is apparent, therefore, that, on the evidence, even though the power press did not conform to the warranty, express or implied, it could not be found there was no consideration or that there was a failure of consideration for the notes in question. The consideration for the notes was the press, the dies, the motor, the accessories, and the warranty, all of which were given and received at the time the notes were given. The court should have directed the jury to return a verdict for the plaintiff in the Ohl & Co. suit upon the notes.

While the answer of the Smith Company to the suit upon the notes set up a want of consideration and a failure of consideration, it did not allege a partial failure of consideration, nor seek damages for breach of the warranty by way of recoupment as a defense or equitable set-off to the amount due on the notes. Under its answer, as drawn, it was not open to the defendant in that suit to introduce evidence and have the jury determine the damages occasioned by a breach of the warranty as a defense by way of recoupment or equitable set-off to defeat recovery upon the notes. By its answer in that suit the defendant was limited to showing that there was no consideration or a total failure of consideration for the notes. As pointed out in Jackman v. Doland, 116 Mass. 550, what is "only a subject of recoupment" does "not show a want of consideration." Then again there was no failure of title to the whole or any part of the property transferred, and, as said in Hodgkins v. Moulton, 100 Mass. 309, 310, "it is not the common case of want of consideration arising from a total or partial failure of title in the plaintiff to property in payment for which the note was given"; that the want of consideration which may be availed of in defense of an action on a note is "such total or partial want of consideration"—a total or partial failure of title. It was further said in the opinion on page 312:

"It may be, that, * * * a failure to perform an executory contract forming the consideration for a note may, when properly set forth in the answer, be given in evidence as an equitable set-off of damages, by way of recoupment and to avoid circuity of action. But clearly such defence must be specially stated in the defendant's answer."

It is clear, therefore, that the evidence disclosing a breach of the warranty fell far short of showing that there was no consideration or that there was a failure of consideration for the notes, and that the motion for a directed verdict should have been granted.

It is equally plain that the portions of the charge excepted to and above quoted, where the court said, "The only question" and "the whole thing" was whether the machine would "bend the iron in a proper way to turn out merchantable stair treads and risers and stringers," and where he said: "Now it is up to you to say on this *whole case*—in the first place, did the machine do or would the machine have done, if properly handled and operated, the work in turning or bending these soft steel plates. *If you find that it would do that,* then your verdict must be for the Ohl Company for the full amount of what they are suing for" (italics ours), are clearly wrong. These instructions show that the jury were not permitted to find a verdict for Ohl & Co. on the notes unless the machine would fulfill the warranty, express or implied. A mere breach of the warranty would not establish a want of consideration or a failure of consideration. The warranty was not pleaded in the answer, and, if it had been, would have been an equitable defense or set-off only to the extent that damages were shown to have been suffered by reason of its breach.

Then again, the charge in the Ohl & Co. case was also defective and insufficient, for the jury were given no instructions as to what it should do in case it found the machine failed to meet the requirements of the warranty in the slightest particular. It is unnecessary to discuss the proposition, for it is apparent that the jury, under the instructions given, could only find a verdict for the plaintiff upon the notes in case they found that the machine fulfilled the requirements of the warranty, express or implied. This was erroneous as above pointed out.

The question remains whether the Smith Company, under the allegations of its declaration and the evidence in the case, could maintain its action for breach of the warranty, express or implied. In this action, as well as in the other, Ohl & Co. at the close of all the evidence requested the court to direct a verdict in its favor, which was denied, subject to exception; and this is assigned as error.

When the Smith Company discovered that the machine did not fulfill the warranty, if it did not, it had open to it two or more courses. It could have rescinded the contract, returned the machine, and sued to recover the part of the purchase money already

paid; or it could have paid the balance due on the notes according to the contract, kept the machine, and sued for breach of the warranty. It kept the machine. It did not pay the balance of the purchase money, but refused to pay it, and contested its obligation to do so. It was a condition to its right to maintain its action on the warranty, having kept the machine, to pay the balance due on the notes, Gilmore v. Williams, 162 Mass. 351, 352, 38 N. E. 976; McNeal-Edwards Co. v. Frank L. Young Co. (C. C. A.) 51 F.(2d) 699, 701, or to have confessed or been subjected to a judgment for the whole amount remaining due at the contract price, which the Massachusetts courts have undoubtedly regarded as the equivalent of payment, Star Glass Co. v. Morey, 108 Mass. 570, 573; Gilmore v. Williams, 162 Mass. 351, 38 N. E. 976, 977; Cox v. Wiley, 183 Mass. 410, 67 N. E. 367, 368; John Service, Inc., v. Goodnow-Pearson Co., 242 Mass. 594, 136 N. E. 623, 29 A. L. R. 1513; Bodurtha v. Phelon, 13 Gray (Mass.) 413, 414.

In Star Glass Co. v. Morey, supra, the court said:

"If he [the plaintiff in the cross suit] had desired to recover full damages in his cross action, that is to say, damages for the defects and inferior quality of the goods delivered, as well as damages for the nondelivery of the remainder, he was entitled to do so; but in that case he must have submitted to a verdict in the first suit for the whole amount remaining due for the goods delivered, at the contract price."

Gilmore v. Williams, supra, was an action to recover damages for a breach of warranty as to the condition of three cows bought by the plaintiff of the defendant, for which he paid $100 down and gave his note for the balance of the purchase price, or $125. It appeared that, prior to bringing the suit on the warranty, the plaintiff had been sued by the defendant on the note, who obtained judgment for the full amount of the note, which later the plaintiff paid. In the suit on the warranty, the court held that the plaintiff "might retain the cows on payment of the note, and enforce his right to be paid as damages the difference between their value as they were and their value as they would have been if the warranty had been well founded." It was also there said:

"When the plaintiff discovered the breach of warranty, he could avail himself of his rights in either of three ways: He might rescind the contract, return the property, and recover back his money (Bryant v. Isburgh, 13 Gray [Mass.] 607 [74 Am. Dec. 655]); he might set up the breach of warranty as a defense in whole or in part to a claim upon the note, and have his damages allowed by way of recoupment; or he might pay the whole amount of the note, and bring a suit for his damages."

In Cox v. Wiley, supra, it appeared that the action under review was brought in the municipal court of the city of Boston to recover for labor performed and materials furnished, to which the defendant pleaded a general denial; that later the defendant brought suit in the same court for breach of warranty under the contract. The answer to this was a general denial. The cases were tried together in the municipal court. Judgment was given for the defendant in the first action, and in the second the plaintiff recovered $1 as damages. The plaintiff in the first action satisfied the judgment in the second, and in the first one appealed the case to the superior court. After trial in that court and the transfer of the case to the Supreme Court, it was there pointed out that the defendant in the first action "might pay the claim, and bring a suit for his damages"; that, having brought his action on the warranty for damages and not set them up in recoupment in the other suit, "it left the court to assess these damages upon the theory that the property in the heater had passed to him, and that it had been paid for, or would be paid for"; that the damage awarded for the breach of warranty in the municipal court was "presumed to have been made upon an assumption that the heater had been paid for, or would be paid for."

John Service, Inc., v. Goodnow-Pearson Co., supra, was where the court, having held that the plaintiff was entitled to judgment in his suit to recover the full value of goods delivered under a contract, ruled that the judge below correctly left to the defendant the right to recover damages for a breach of the warranty in an independent action if it should be so advised; evidently regarding the judgment for the price as the equivalent of payment.

In Bodurtha v. Phelon, supra, the plaintiff brought an action for fraudulent misrepresentations as to the soundness of a colt which the defendant had sold him for $70. The answer was a general denial, and also alleged that the vendor had sued the purchaser before a justice of the peace on the note given for the price; that at the trial on the note

Bodurtha, the purchaser, introduced evidence as to the soundness of the colt and of Phelon's deceit; that the justice deducted $40 for the defects in the colt, and gave Phelon judgment for $30 and costs, from which he appealed to the court of common pleas; that in that court Bodurtha defaulted; that, after the trial of the action on the note, this action of deceit was tried before another justice of the peace upon the same cause of action which had been set up as a defense in the action on the note, and judgment was rendered in the action for deceit in favor of Bodurtha for $30 and costs, from which Phelon appealed to the court of common pleas. Bodurtha in his replication in the court of common pleas alleged that, upon his default, judgment was rendered against him for the full amount of the note. Upon these pleadings that court gave judgment for Phelon in the action for deceit, and Bodurtha appealed. The Supreme Court reversed the judgment of the court of common pleas, saying:

"The plaintiff could not maintain this action, if the judgment recovered against him on his note given to the defendant for the price of the colt were now in force. He would have received, in the deduction of forty dollars from the amount of that note, his damages for the deception practiced on him by the defendant in the sale of the colt, and have been thereby barred from any further remedy for that deception. Burnett v. Smith, 4 Gray [Mass.] 50. But that judgment was vacated by the defendant's appeal therefrom to the court of common pleas; and upon the entry of that appeal in that court, the present plaintiff withdrew his defence and was defaulted. Thereupon *judgment* was rendered against him for the full amount of the note, and *he was left at liberty to prosecute this action.*"

We are therefore of the opinion that, under the rule in Massachusetts, the plaintiff in an action on a warranty in the sale of goods cannot maintain the action without having paid the contract price or confessed or been subjected to judgment for the price. But, the price having been paid or secured in one of these ways, the action may be maintained.

The Smith Company at the time of the trial in the District Court had not paid the balance of the notes due for the purchase price or confessed or been subjected to judgment thereon, and it could not maintain the action. But, if the Smith Company, on the case being remanded to the District Court for a new trial, pays the balance due on the notes, or confesses or is subjected to judgment thereon, it may then maintain its action on the warranty; the judgment on the notes being stayed to await the outcome of the suit on the warranty.

The rule announced in Cook v. Castner, 9 Cush. (Mass.) 266, allowing a purchaser of goods in an action against him for the price to plead a breach of warranty by way of recoupment and have his damages offset in that action, and also go to trial at the same time in a cross-action for breach of the warranty, no longer exists in Massachusetts, and has not since 1903. Under the rule in vogue to-day, he must, at the close of the evidence, elect whether he will go to the jury under his plea in recoupment or in his cross-action. He cannot do both. Mark v. Stuart-Howland Co., 226 Mass. 35, 115 N. E. 42, 44, 2 A. L. R. 678; Gen. Laws of Mass. c. 106, § 58. The court there said:

"Where a defendant pleads in recoupment and also brings a cross-action for the same matters, it is the correct practice for the judge to require him to elect at the close of the evidence whether he will proceed on the answer in recoupment or on the cross-action (Cox v. Wiley, 183 Mass. 410, 413, 67 N. E. 367; Hebert v. Dewey, 191 Mass. 403, 407, 77 N. E. 822), although the earlier practice [in Massachusetts] seems to have been to permit him to rely on both (Cook v. Castner, 9 Cush. [Mass.] 266; Star Glass Co. v. Morey, 108 Mass. 570)."

But in any event the rule announced in Cook v. Castner is without application here, for the Smith Company, in its answer to the suit for the price, did not set up the warranty by way of recoupment in addition to bringing its cross suit on the warranty, as was the case in Cook v. Castner.

The court, having charged the jury in the Ohl & Co. suit that the plaintiff could not recover on the notes unless the machine complied with the terms of the warranty, then proceeded to instruct the jury in the Smith Company suit, saying:

"If, on the other hand, you find the machine would not do it, you then must make up your minds what that machine is worth in its *present condition*, or what it would have been worth, rather, at the *time before it was broken*, what a machine like that machine, which wouldn't do quite what it was agreed to do—what that would have been worth at the time before it broke.

"There is some *evidence* as to the *present*

*value* of that machine, and you may find on that *what it is*. And then, when you have found *that amount*, you may also find for the plaintiff for the sum of money which they spent in fixing up the flywheel in one case and also the repairing of the machine. As I have the figures here, they are $2,431.75.

"So, with the Smith Company having paid nearly $5,000 and having spent nearly $2,500 you will find *what the machine is worth*, and if it is worth less than the $5,000 they paid, you may find a verdict for the difference for the Smith Company, and in addition to that you may add to it the amount which they spent for repairs in the neighborhood of $2,500. I think that is all I need to say, gentlemen." (Italics ours.)

These instructions were excepted to, and are the subject of assignments 48 and 49. In the first quoted paragraph the court charged the jury that they were to ascertain what the machine was worth in its present condition, and also what it was worth at the time before it was broken. In the second paragraph, that they were to find the present value of the machine, and that, when they found what that amount was, they could also find the sum of money which the Smith Company spent in fixing up the flywheel and repairing the machine, amounting to $2,413.75. And in the third paragraph they were told that, if they found that "the machine is worth less than the $5,000 they paid," the Smith Company was entitled to recover the difference between its worth and the $5,000, and, in addition thereto, the amount paid for repairs.

■ As the case was left under the final instructions of the court to the jury, the Smith Company was to recover the difference between the $5,000 it had paid and the "present value" or worth of the machine, if it was worth less than the $5,000 paid. This instruction is clearly wrong, for the Ohl Company was entitled to have the jury consider, in estimating the damages of the Smith Company, the value of the machine at the time it was delivered in March, 1926, not its value at the time of the trial in May, 1929, after it had been used for some three years or more, during which time it had been broken. The jury should have been instructed to find the value of the machine at the time of its delivery, not its present value at the time of trial. In this respect the charge was erroneous. Moss v. Sherburne (C. C. A.) 11 F.(2d) 579, 582; National Wholesale Grocery Co. v. Mann, 251 Mass. 238, 250, 146 N. E. 791; Mass. G. L. c. 106, § 58 (7).

■ The charge was also erroneous in instructing the jury that they might award the Smith Company as damages the difference between the present value of the machine and the $5,000 paid. A proportionate part of the $5,000 paid covered the value of the dies amounting to $1,214.68, as to which the court instructed the jury that the Smith Company made no complaint; and it included also a proportionate part of the price of the motor, which was $310, as to which no complaint was made; and the court should have instructed the jury that, in determining the damages of the Smith Company, they should first eliminate from the $5,000 the proportionate part thereof which went to pay for the dies and motor, as to which there was no complaint.

■ If, hereafter, the Smith Company consents to or suffers judgment against it on the last twelve notes in suit, the Smith Company, if it establishes a breach of the warranty, would be entitled to recover as damages, if the machine is shown to have been of no value at the time of delivery, the difference between its contract price and the price of the motor and dies, unless it is shown that the motor and dies were not worth the contract price. In such case it could recover the expenditures incurred in making the repairs only if they were made in good faith and in reasonable expectation of restoring the capacity of the machine.

■ If, on the other hand, the machine is shown to have been of some value at the time of delivery and the Smith Company establishes a breach of the warranty, it would be entitled to recover as damages the difference between the contract price and the value of the machine. The contract price of the motor and dies should also be deducted from this balance, unless it is shown that the motor and dies, due to the insufficiency of the machine, were not worth the contract price, in which case the deduction should be the value of the motor and dies at the time of delivery.

■ There are two elements that enter into the value of the machine at the time of delivery: (1) Its capacity to meet the warranty; and (2) its weakness in structure. To the extent that its lack of capacity to fulfill the warranty is found to affect the value of the machine, that sum should be deducted from the contract price in ascertaining the Smith Company's damages. To the extent that its structural weakness affected its value, that sum also is to be deducted from the contract price, but the expenditures incurred to overcome structural weakness should not be allowed,

for they already would have been taken into account. If structural weakness is not considered in determining the value of the machine at the time of delivery, then the expenditures by way of repairs to the extent that they were reasonably necessary to relieve structural weakness should be considered as an additional element of damages.

For the foregoing reasons the judgments in both suits must be vacated and the actions remanded to the District Court for such further action as the parties may be advised. And, as it is wholly problematical what course the parties will then pursue in an endeavor to establish their rights, we do not find it necessary to consider in detail the other and numerous assignments of error, the most of which are or will become inconsequential.

It may not be aside the mark, however, to say that we do not think the trial court erred in charging the jury that there was an implied warranty that the machine had capacity to bend 3/8" soft steel in a proper way to turn out merchantable stair treads, risers, and stringers, and that it would not be inconsistent with the express warranty when that is considered in connection with the specifications to which the warranty refers and which are made a part of it. The express warranty, when so considered, undoubtedly means that the machine has a capacity to bend and set the metal specified at a 90 degree angle, which is but another way of saying that it will bend the iron suitably for merchantable stair treads, risers, and stringers.

There is also a question whether the notice or notices of defects in the machine were given within a reasonable time, counsel for Ohl & Co. contending that, on the facts in the case, notice was not given as a matter of law within a reasonable time, while the court charged as a matter of law that it was. We fail to see wherein the court erred in this respect.

There was also a dispute as to whether a safety device of some kind was necessary and whether the clutch provided in the machine amounted to a safety device, if properly adjusted. As to this the court instructed the jury that it was a question of fact for them to determine on the evidence. We see no error in this.

In each action, No. 2537 and No. 2538:

The judgment of the District Court is vacated, the verdict is set aside, and each case is remanded to that court for further proceedings not inconsistent with this opinion. Ohl & Co. recovers costs in this court.