## SHERBURNE et al. v. MOSS et al.

(Circuit Court of Appeals, First Circuit. February 26, 1924.)

No. 1670.

Brokers ⚖➡106—Evidence held to show authority to make contract, or at least ratification.

In buyer's action for sellers' failure to deliver sugar, evidence *held* sufficient to warrant a finding that sellers authorized brokers to make the contract, or at least that they ratified such contract after it was made.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Action by John H. Sherburne and others, trustees, against Jacinto Moss and others. Judgment for defendants, and plaintiffs bring error. Reversed and remanded.

Howard Stockton, Jr., and John H. Sherburne, both of Boston, Mass., for plaintiffs in error.

Dunbar F. Carpenter, of Boston, Mass. (Gaston, Snow, Saltonstall & Hunt, of Boston, Mass., on the brief), for defendants in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an action brought by the receivers in bankruptcy of the R. E. Sherburne Company, a Massachusetts corporation, to whose right the present plaintiffs in error, as trustees under a declaration of trust, have succeeded, against the defendants (defendants in error), Moss & Co., copartners, with a usual place of business in Buenos Aires in the Argentine Republic, for failure of the defendants to deliver to the Sherburne Company 23,000 tons of sugar under a contract reading as follows:

"Minford, Lueder & Co., 106 Wall Street, New York.

"Contract No. 2033.                                              April 14, 1920.

"Messrs. Moss & Co., Buenos Aires, Argentine—Gentlemen: We beg to confirm the purchase on this date from your good selves through your New York representatives, Messrs. Aboab Hermanos, of Buenos Aires and New York, as sellers, for account of the E. R. Sherburne Company, Boston, as buyers, of about twenty-three thousand (23,000) long tons (of 2,240 pounds each) pile pure white granulated sugar, polarizing 99° plus, and equal in quality to United States standard granulated sugar.

"At a price of three hundred thirty-two (332) dollars per long ton of 2,240 pounds, free on board Buenos Aires.

"Sugar to be shipped in vessels to be provided by buyers, and sellers to have sugars ready for delivery at steamer's call at Buenos Aires during April and May, 1920, and June, 1920.

"Sugar to be invoiced on net shipping weights.

"Payment: Buyers are to open by cable a confirmed irrevocable credit in favor of Messrs. Moss & Co., Buenos Aires, to be availed of by sight against delivery of complete set of shipping documents, including certificate of analysis and Argentine export license, not including prepaid freight.

"Buyers are to receive a guaranty of shipment at the point of embarkation and of performance of this contract by the seller, which guaranty is to be acceptable to buyers' bank and against satisfactory evidence of analysis as

to quality of the sugar by the American Chamber of Commerce of Buenos Aires and export license of the Argentine government.

"Marine insurance from shore to shore including craft risk, loading and discharging, to be for buyers' account.

"Sellers to notify buyers by cable immediately the vessels designated to take the sugar arrive at loading port for purposes of insurance.

|                     |          |                        |
|---------------------|----------|------------------------|
| "Yours very truly,  |          | Minford, Lueder & Co.  |
| "Sellers:           | Accepted | Buyers:                |
| "J. Moss & Cie.,    |          | E. R. Sherburne Co.    |
| "By Aboab Herms.    |          | E. R. Sherburne,       |
| "J. H. Bela,        |          | Brokers."              |

A jury trial was had in the United States District Court for Massachusetts and the jury returned special findings in answer to questions submitted to them, as follows:

(1) Was Bela authorized by Aboab Hermanos to make the contract in suit? Answer: Yes.

(2) Was Aboab Hermanos authorized by Moss & Co. to enter into the contract in suit? Answer: Yes.

(3) If the contract was not authorized by Moss & Co. before it was made, was it subsequently ratified by them? Answer: Yes.

(4) Did the E. R. Sherburne Co. open or cause to be opened an irrevocable credit in favor of Moss & Co. within a reasonable time after the execution of the contract in suit? Answer: Yes.

(5) Did the plaintiffs waive or release any rights which they had under the contract in suit? Answer: No.

(6) What are the plaintiffs' damages? Answer: $1,361,706.14.

The jury thereupon, by direction of the court, entered what is styled in the record an alternative verdict as follows:

"The jury find for the plaintiffs and assess damages in the sum of one million, three hundred sixty-one thousand seven hundred six and 14/100 dollars.

"But, if, as a matter of law, the plaintiffs are not entitled to a verdict, then the jury find for the defendants and consent that this verdict may be entered on order of the United States District Court for the District of Massachusetts or of the United States Circuit Court of Appeals for the First Circuit, or of the Supreme Court of the United States, with the same effect as if returned by them."

Thereafter the defendants filed a motion asking that the alternative verdict be entered for the defendants in place of the one previously entered for the plaintiffs. The parties having been heard on this motion the court set aside the verdict for the plaintiffs on the ground that there was no evidence warranting the jury in finding the answers they did to the second and third questions, and entered the alternative verdict upon which judgment was entered in favor of the defendants. The plaintiffs bring this writ.

The real questions presented are, whether there was any evidence from which the jury might reasonably find that Moss & Co. authorized the contract of April 14, 1920, or, if they did not, whether they ratified it.

The evidence pertaining to the questions of authorization and ratification of the contract is alone before us.

It appeared that Moss & Co. had been in business in Buenos Aires, Argentine, some 30 years engaged in the purchase and sale of sugar and exporting the same to foreign countries; that they were one of the

largest concerns in that country engaged in this line of business; that, while this transaction, involving as it did more than $7,000,000, was one of the largest it had ever engaged in, it had participated in larger transactions of this nature; that Aboab Hermanos were a firm of agents or brokers in sugar transactions in Buenos Aires, with a branch in New York; that their New York branch was in charge of one Bela, and that they were engaged in negotiating sales of sugar between parties in the Argentine and purchasers in this country through this branch; that in the month of April, 1920, and at other times they had negotiated sales of sugar in this country for Moss & Co.; that prior to April 14, they had entered into two contracts through their New York branch in behalf of Moss & Co., but that neither contract had been carried out—one because of the inability of the buyer to secure a letter of credit, and the other because no export license was procured by the defendants within the time limited by the letter of credit; that after April 14, and during that month or shortly thereafter, some five contracts of sale were entered into for Moss & Co. in this country through Aboab Hermanos, some of which were carried out; that one of these was a contract for the sale of 20,500 tons by Moss & Co. to the E. R. Sherburne Company, which contract was entered into on the 26th day of April, 1920, and was for the same sugar involved in the contract of April 14, the price of which, however, was advanced from $332 per ton, as called for in the contract of April 14, to $410; that some of the terms of the contract of April 26 were otherwise different from that of April 14, one of which was that, if the export license was not granted before the 10th of May "the contract shall be null and void," and, no export license having been obtained before that time, the contract was voided.

The jury found that Bela was authorized by Aboab Hermanos to make the contract in suit and there was evidence that this was done through cables from the house of Aboab Hermanos in Buenos Aires to Bela in New York; that according to the custom and usual course of business at the office of Aboab Hermanos in Buenos Aires information received in relation to transactions of this nature would be communicated to their clients in Argentine; that the day following the execution of the contract of April 14 in New York, to wit, April 15, 1920, the Old Colony Trust Company of Boston, at the request of the E. R. Sherburne Company, sent a cable to Moss & Co. at Buenos Aires stating:

"We are prepared open credit 23,000 tons sugar account E. R. Sherburne Company, Boston, against guarantee of shipment at point of embarkation and performance by seller, such guarantee to be acceptable to us and against satisfactory evidence of analysis as to quality of sugar by American Chamber of Commerce Buenos Aires and export license of Argentine Government Reply Telegraphically."

That this cable was received by the defendants at Buenos Aires on April 16, 1920, but that in transmission the figures "23,000 tons," which were transmitted, by error were made to read "34,000 tons" in the cable as actually received by the defendants; that upon receipt of this cable Moss & Co. got into communication with Aboab Hermanos, who told

them what the cable meant; that thereafter, on the same day, Moss & Co. cabled the Old Colony Trust Company at Boston as follows:

"April 16, 1920.
"Old Colony Trust Co., Boston.
"Sugar we are working through Aboab Hermanos New York refer to them.
"Moss."

That this cable was received by the Old Colony Trust Company April 20, and on that day was communicated to a representative of the Sherburne Company, who, on April 21, saw Bela in New York; that Bela said the defendants were finding fault about the credit, and that they had better hasten and make the credit satisfactory; that, on April 22, the Old Colony Trust Company Cabled the British Bank of South America, Buenos Aires, as follows:

"We have opened irrevocable credit 1426 favor Moss Company B. Aires account E. R. Sherburne Company, Boston, sight drafts on us for seven million six hundred thirty six thousand dollars shipment 23,000 tons sugar net shipping weights at 332 dollars ton f. o. b. B. Aires, April, May, June to New York, insurance here expired July thirty-first, one copy consular invoice and B/lading to be forwarded by bank negotiating direct to Bankers Trust New York. You are to advise beneficiary of opening of this credit only after delivery to you of guarantee of shipment at point of embarcation and performance by seller such guarantee to be acceptable to you and against satisfactory evidence of analysis as to quality of sugar by American Chamber of Commerce Buenos Aires, and export license of Argentine Government, advise telegraphically when these have been received."

That on the same day, April 22, they cabled Moss & Co. at Buenos Aires:

"Communicate with British Bank South America regarding 23,000 tons sugar account Sherburne.'"

That both of these cables were received the following day, and Moss & Co. then inquired of the bank and learned of the credit; and that on April 23 the contract was repudiated, the price of sugar in New York in the meantime having gone up 2 or 2½ cents a pound.

No one from Buenos Aires representing the house of Aboab Hermanos gave evidence of this transaction as carried on at that end, but the deposition of Mr. Moss, a member of Moss & Co., was taken by the defendants and put in evidence. While he denied in portions of his testimony that he authorized the contract or that he knew anything about it, he admitted that, on receiving the cable of April 14 from the Old Colony Trust Company, he got into communication with the house of Aboab Hermanos and learned from it what the cable meant. But independently of what he learned from the house of Aboab Hermanos, we think that the jury could find that, as a business man accustomed to transactions of this nature, when he received the cable of April 15 from the Trust Company and read it, he understood that a contract had been made or was in the process of being made for the purchase by Sherburne Company from him of a large quantity of sugar, for the cable informed him that the credit which the Trust Company proposed to establish in Buenos Aires was for the account of Sherburne Company and was to run to Moss & Co. It could also reasonably find that, when Moss & Co. communicated with Aboab Hermanos as to the cable of April 15

and were informed what it meant, they learned that the house of Aboab Hermanos had entered into a contract with Sherburne Company in their behalf for 23,000 tons of sugar, and not for 34,000 tons; that the latter figure was an error in the transmission of the cable; and that they also then learned of all the terms of the contract.

The jury being warranted in finding that Moss & Co. knew of the contract of April 14 before they sent the cable of the 16th, they also could find, from the language used in that cable, that Moss & Co. intended the Trust Company and Sherburne Company to understand that the contract negotiated through Aboab Hermanos was authorized or approved and that the details as to credit should be arranged through Bela, the representative of Aboab Hermanos in New York; for, in the Moss cable, after referring to sugar, the subject-matter of the contract, they said:

"We are working through Aboab Hermanos New York Refer to them."

From this evidence we think the jury was clearly warranted in finding that the contract was authorized, or at any rate ratified, by the defendants.

Having reached this conclusion, it is unimportant whether the District Court could legally have entered the alternative verdict for the defendants and set aside the verdict for the plaintiffs. That question would become important only in case we were of the opinion that there was no evidence from which the jury could have answered the questions here in controversy in the affirmative. Such a conclusion would have required an affirmation of the judgment, provided the court below had authority to set aside the verdict and enter the alternative verdict for the defendants, while if that court had no such authority the case would have had to be sent back for a new trial.

The judgment of the District Court is vacated, the verdict for the defendants is set aside, and the case is remanded to the District Court for further proceedings not inconsistent with this opinion. The plaintiffs in error recover costs in this court.