**MOSS et al. v. SHERBURNE et al.**

(Circuit Court of Appeals, First Circuit. March 3, 1926. On Petition for Rehearing April 6, 1926.)

No. 1855.

1. **Exceptions, bill of** ⬅️41(1)—**Bill of exception filed within extension of time granted therefor held timely (District Court rule 19).**

Bill of exceptions, filed within extension of time granted therefor when motion for new trial was overruled, *held*, under District Court rule 19, timely filed.

2. **Sales** ⬅️89—**Whether buyer, after seller's attempted cancellation of contract, waived rights thereunder by making new contract for part of same goods, held for jury.**

Whether buyer of sugar, after seller's attempted cancellation of contract by making new contract for part of same sugar, waived or relinquished rights under first contract, *held*, under conflicting evidence as to whether he was told that he was purchasing same sugar, question for jury.

3. **Appeal and error** ⬅️1050(1)—**Error, if any, in admitting evidence of market value at place other than place of delivery, in action for breach of contract to sell sugar, held not prejudicial.**

Where jury, in calculating damages for breach of contract to sell sugar f. o. b. Buenos Aires, did not consider evidence of market value in New York, but clearly considered price fixed in a second contract c. i. f. New York, in determining market value in Buenos Aires, *held*, error, if any, in admitting proof of market value in New York, was not prejudicial.

4. **Sales** ⬅️418(2)—**Measure of damages for seller's breach of contract is difference between contract price and market value at time of breach and place of delivery.**

Measure of damages for breach of contract by seller is difference between contract price and market value of goods at time of breach and place of delivery, or, if there is no market value at such place, then at nearest available market.

5. **Sales** ⬅️416(2)—**In action for breach of contract to sell sugar, evidence of contract price under second contract between same parties for same sugar held admissible as evidence of market value.**

In action for breach of contract to sell sugar f. o. b. Buenos Aires, evidence of contract price of same sugar under a second contract c. i. f. New York between same parties *held* properly admitted as evidence of market value of sugar described in first contract.

6. **Appeal and error** ⬅️1151(1).

Clerical error in computing damages for breach of contract, if possible, may be corrected by remittitur, without new trial.

On Petition for Rehearing.

7. **Appeal and error** ⬅️835(2).

Defense, first asserted on petition for rehearing on second appeal of case, *held* not available.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Action by John H. Sherburne and others, trustees, against Jacinto Moss and others. Judgment for plaintiffs, and defendants bring error. Affirmed, on condition remittitur be. filed; otherwise, reversed, and new trial granted.

See, also, 295 F. 769.

Gaston, Snow, Saltonstall & Hunt, of Boston, Mass. (Dunbar F. Carpenter and Thomas Hunt, both of Boston, Mass., of counsel), for plaintiffs in error.

Howard Stockton, Jr., and John H. Sherburne, both of Boston, Mass. (Sherburne, Powers & Needham and Warren, Garfield, Whiteside & Lamson, all of Boston, Mass., on the brief), for defendants in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is a writ of error to the United States District Court for the District of Massachusetts to reverse a judgment entered in an action of contract brought by the receivers in bankruptcy of E. R. Sherburne Company, a Massachusetts corporation, to whose rights the present defendants in error have succeeded against Moss & Co., plaintiffs in error, copartners, with a usual place of business at Buenos Aires in the Argentine Republic, to recover damages for breach of a contract to deliver to the Sherburne Company 23,000 tons of sugar. For convenience the plaintiffs in error will be referred to as "Moss" and the defendants in error as "Sherburne."

A written contract was entered into by Sherburne with Moss on April 14, 1920, for the purchase of 23,000 tons of sugar at $332 per ton f. o. b. Buenos Aires. This contract was as follows:

"Minford, Lueder & Co., 106 Wall Street, New York.

"Contract No. 2033. April 14, 1920.

"Messrs. Moss & Co. Buenos Aires, Argentine—Gentlemen: We beg to confirm the purchase on this date from your good selves through your New York representatives, Messrs. Aboab Hermanos of Buenos Aires and New York, as sellers, for account of the E. R. Sherburne Company, Boston, as buyers, of about twenty-three thousand (23,000) long tons (of 2,240 pounds each) pile, pure, white granulated sugar, polarizing 99° plus and equal in quality to United States standard granulated sugar.

"At a price of three hundred thirty-two dollars ($332) per long ton of 2,240 pounds, free on board, Buenos Aires.

"Sugar to be shipped in vessels to be provided by buyers, and sellers to have sugars ready for delivery at steamer's call at Buenos Aires during April and May, 1920, and June, 1920.

"Sugars to be invoiced on net shipping weights.

"Payment: Buyers are to open by cable a confirmed, irrevocable credit in favor of Messrs. Moss & Company, Buenos Aires, to be availed of by sight against delivery of complete set of shipping documents, including certificate of analysis and Argentine export license, not including prepaid freight.

"Buyers are to receive a guaranty of shipment at the point of embarkation and of performance of this contract by the seller, which guaranty is to be acceptable to buyer's bank and against satisfactory evidence of analysis as to the quality of the sugar by the American Chamber of Commerce of Buenos Aires and export license of the Argentine government.

"Marine insurance from shore to shore, including craft risk, loading and discharging to be for buyer's account.

"Sellers to notify buyers by cable immediately the vessels designated to take the sugar arrive at loading port for purposes of insurance.

"Yours very truly,
"Minford, Lueder & Co., Buyers.
"Sellers: J. Moss & Cie,
"By Aboab Herms.
"J. J. Bela.
"Accepted: E. R. Sherburne Co.
"E. R. Sherburne, Brokers."

This case came on for trial in the District Court before a jury, which made special findings in favor of the plaintiffs in answer to questions submitted by the court, and also, on March 10, 1922, by its direction, returned the following alternative verdict:

"The jury find for the plaintiffs and assess damages in the sum of one million three hundred sixty-one thousand seven hundred six and 14/100 dollars.

"But if, as a matter of law, the plaintiffs are not entitled to a verdict, then the jury find for the defendants and consent that this verdict may be entered on order of the United States District Court for the District of Massachusetts, or of the United States Circuit Court of Appeals for the First Circuit or of the Supreme Court of the United

States, with same effect as if returned by them."

On March 11, 1922, Moss filed a motion for a new trial, and also to set aside the verdict for the plaintiffs, and to enter one for the defendants.

The judge of the District Court, on August 22, 1922, set aside the verdict for the plaintiffs and entered a verdict for the defendants, upon the ground that the plaintiffs had failed to establish either authority of Aboab Hermanos to act as the agent of the defendants or the ratification of the contract by them.

Upon a writ of error by plaintiffs this court held that the jury was warranted in finding that the contract was either authorized or ratified, and an order was entered vacating the judgment of the District Court, setting aside the verdict for the defendants, and remanding the case to the District Court for further proceedings not inconsistent with the opinion rendered. See Sherburne v. Moss, 295 F. 769.

After receipt of the mandate of this court the District Court, on July 22, 1924, ordered the verdict for Moss to be set aside, and judgment entered for Sherburne on the verdict of the jury.

[1] The case has now been brought here by Moss upon a writ of error. We are met at the outset by a motion of Sherburne to strike the bill of exceptions from the record, on the ground that it was not filed within the time allowed by law or the rules of the District Court.

When, on July 22, 1924, judgment was entered for Sherburne on the verdict of the jury, the motion of Moss for a new trial was then pending. By order of the District Court the time for filing a bill of exceptions by Moss was extended to November 1, 1924, and this bill of exceptions was filed October 27, 1924.

The motion for a new trial which had been filed by Moss was not disposed of until judgment upon the verdict was entered for Sherburne; and as, under rule 19 of the District Court, which provides that a bill of exceptions must be filed within 20 days after the verdict or the denial of a motion for a new trial, "unless the court or judge shall otherwise order," and the time for filing the same had been properly extended to November 1, 1924, the bill of exceptions in this case was seasonably filed. Slip Scarf Co. v. William Filene's Sons' Co. (C. C. A.) 289 F. 641.

When the case was formerly before this court upon Sherburne's exceptions, we held

that the only questions presented were whether there was any evidence from which the jury might reasonably find that Moss either authorized or ratified the contract of April 14th, and only the evidence pertaining to the questions of authorization and ratification was before us.

The following positions are now taken by Moss as grounds for reversal:

First. That, by making a contract on April 26, 1920, for the purchase of the same sugar as was the subject of the contract of April 14, 1920, Sherburne released the defendants from liability under the contract of April 14, 1920, and that the trial court erred in refusing to rule as requested by the defendants that, as a matter of law, such was the case.

Second. That the trial court, over the objections and exceptions of the defendants, permitted improper evidence to be introduced, from which the jury were allowed to compute the damages, and failed to rule as the defendants requested, and improperly charged the jury as to damages.

[2] The contract of April 14, 1920, was canceled on or about April 17, 1920, by a cable from Aboab of Buenos Aires to Aboab in New York, on the ground that credit had not arrived on April 16th. On April 26, 1920, another contract was made between the same parties for the purchase of 20,500 tons of what the parties have stipulated was a part of the sugar included in the former contract, at the price of $410 per long ton of 2,240 pounds, c. i. f. New York, and with the provisions that the export duty, if any, was to be for buyer's account, and that, if the export license was not granted before the 10th of May following, the contract should be null and void. No export license was obtained, and no sugar was shipped under this contract.

At the close of the evidence Moss made the following requests for rulings:

"A subsequent contract covering the same subject-matter and made by the same parties as an earlier agreement, but containing terms inconsistent with the former contract, so that the two cannot stand together, rescinds, supersedes, and is substituted for the earlier contract, and becomes the only agreement of the parties on the subject.

"If and when the parties to the contract of April 14, 1920, entered into a new contract (that of April 26, 1920), covering the the same subject-matter, the new contract necessarily superseded, abrogated, and took the place of the first as a matter of law, and

became the measure of the obligations of both parties."

The court declined to give these instructions, but gave the following:

"On the 26th another arrangement was made, or a contract even, between Moss & Co. and the Sherburne Company, with reference to 20,500 tons. The defendant says that the contract related to the remainder of the same sugar that had formed the subject-matter of the 23,000-ton contract of two weeks previous, and that, when the parties made that contract—the same parties—it was understood that all rights under the contract of April 14th were waived and abandoned by the plaintiff or by the Sherburne Company. The plaintiffs and the Sherburne Company say that was not so at all; that nothing was said about their giving up their rights under the April 14th contract; that their attitude was they were insisting upon those rights, and made this purchase of sugar as a purely independent transaction. Well, you are to decide which the understanding of the agreement was. To put it exactly: Are you satisfied by a fair preponderance of the testimony, at the time when Sherburne & Co. and Moss & Co. entered into the contract of April 26th, it was understood and agreed between those parties that the Sherburne Company relinquished and abandoned and waived any and all rights which it had under the contract of April 14th? Are you satisfied that is so? If you are, you will answer that question 'Yes.' If you are not satisfied, you will answer it 'No.'"

The jury, by a special finding, answered the question in the negative.

If it had been shown by uncontradicted testimony that Sherburne knew at the time of the second contract that its subject-matter was the same lot of sugar as that covered by the first, and the circumstances were such that no other conclusion could be drawn than that a cancellation or waiver of rights under the first contract was intended, the requested instruction would have been proper. But the testimony on the part of Moss and Sherburne as to whether the latter was told that it was the same lot of sugar was conflicting, and, as there was nothing to distinguish the lot of pile sugar embraced in the second contract from any other lot, it was for the jury to say whether Sherburne had waived any of his company's rights under the first contract.

The jury have passed upon this by their special finding under the instructions that were given, and which, although in some respects inadequate, placed the issue of waiver

squarely before them. We cannot hold as a matter of law that these instructions, under the conflicting testimony which was given, were not right, or that there was error in refusing to give the requested instructions.

[3] Over the objection of Moss testimony was introduced as to the market value in New York of white granulated sugar during the months of April and May, 1920. It is evident, however, that Moss was not prejudiced by this, because the jury, in arriving at their verdict, did not consider it.

[4] The well-understood rule for the assessment of damages for breach of a contract for the sale of goods, in both federal and state courts, is that, if the contract is broken by the seller, the buyer may recover as damages the difference between the contract price and the market value of the goods at the time of the breach and at the place of delivery, or, if there is no market value at such place, then at the nearest available market.

In this case, under objection of the defendant, to which exception has been taken, the jury were allowed to take into consideration as evidence of the market value of Argentine pile sugar at Buenos Aires at the time of the breach of the contract the price of the same fixed in the second contract, which was $410 per long ton of 2,240 pounds or 18.30 cents per pound c. i. f. New York. The price of sugar per pound under the first contract was 14.82 cents per pound f. o. b. Buenos Aires. To this amount was added the cost of freight, handling, and the import duty into the United States, making in all the sum of 17.43 cents per pound for this sugar unloaded in New York. By adding to 18.30 cents, the cost per pound under the second contract c. i. f. New York, the import duty of 1.36 cents per pound and the cost of handling, .25 cents per pound, the price of 19.91 cents per pound was obtained as the cost of this sugar in New York. The cost of insurance, which, according to the testimony, was 3 cents per 100 pounds, was not added to the contract price in either case.

The amount thus obtained for the cost of sugar in New York under the first contract, deducted from the price under the second contract, left a difference of 2.48 cents per pound, which it is evident was the basis upon which damages were calculated by the jury. It was not, however, according to the undisputed evidence, the difference between the prices under the two contracts. The import duty may be discarded in the consideration of prices under them, as in each it was to be paid by the buyer.

If to the price under the first contract, 14.82 cents f. o. b. Buenos Aires, freight, 1 cent per pound, and insurance, $^3/_{100}$ cents per pound, are added, the price, New York, would be 15.85 cents per pound, and this, deducted from 18.30 cents per pound, the price under the second contract, which includes freight and insurance, but not handling, would leave a difference of 2.45 cents per pound. The same result would be arrived at by deducting from 18.30 cents per pound, the price c. i. f. New York under the second contract, freight and insurance, making the cost f. o. b. Buenos Aires 17.27 cents per pound, or 2.45 cents per pound more than the price under the first contract. As 23,000 long tons are 51,520,000 pounds, this error would reduce the verdict by $15,436.

[5, 6] There was no error in admitting the price in the second contract as evidence of the market value of the sugar described under the first contract at Buenos Aires on the date of the breach of the contract, but there was clearly a clerical error in the computation of damages. To avoid the expense of a new trial, this may be corrected by a remittitur. Hansen v. Boyd, 16 S. Ct. 571, 161 U. S. 397, 411, 40 L. Ed. 746; Van Boskerck v. Torbert, 184 F. 419, 422, 107 C. C. A. 383, Ann. Cas. 1916E, 171; Straus et al. v. Victor Talking Machine Co. et al. (C. C. A.) 297 F. 791, 807.

Ordered, if the defendants in error, within 15 days after this opinion is handed down, file a remittitur of $15,436, with interest for 400 days, the time for which interest was allowed by the jury, in the office of the clerk of the District Court, and a certified copy in the office of the clerk of this court, the judgment, less the amount so remitted, will be affirmed, with costs in this court to the plaintiffs in error. If this is not done, the verdict will be vacated, judgment reversed, and a new trial granted, with costs to the plaintiffs in error.

### On Petition for Rehearing.

The plaintiffs in error have petitioned for a rehearing since our opinion was handed down in this case.

[7] In addition to the defenses relied upon at the trial of this action, and which were argued before us, the petitioner now contends that the contract of April 14, 1920, was a conditional one; that under it Moss did not guarantee that an export license could be obtained from the Argentine government; and that the contract, if one were made, was conditioned upon his being able to obtain this.

The case has been before this court twice, and neither time was this position taken by

Moss. The only defenses relied upon the second time the case was argued before us were:

First. That by making the contract of April 26, 1920, for the purchase of the same sugar as was the subject of the contract of April 14, 1920, Sherburne released the defendants from liability under the contract of April 14, 1920, and that the trial court erred in refusing to rule as requested by the defendants that such was the case.

Second. That the trial court, over the objections and exceptions of the defendants, permitted improper evidence to be introduced, from which the jury were allowed to compute the damages, and failed to rule as the defendants requested, and improperly charged the jury as to damages.

In our opinion we discussed these defenses, and find nothing in the petition which causes us to reach a different conclusion from that which we then reached.

The petition is denied.